**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**at PIKEVILLE**

**CIVIL ACTION NO. 05-385-DLB**

**JAMES D. ROBERTS**                                                         **PLAINTIFF**


**vs.**                               **MEMORANDUM OPINION & ORDER**


**MICHAEL J. ASTRUE, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**


*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff James D. Roberts filed an application for Disability Insurance Benefits (DIB) on October 22, 2003. (Tr. 38-40)  Plaintiff alleges he became unable to work on August 29, 2003, due to back problems, fatigue, shortness of breath, dizziness, chest pain, high blood pressure, vision and hearing problems. (Tr. 45, 63, 70)  Plaintiff's claim was denied initially and on reconsideration. (Tr. 24-27, 30-32) Plaintiff requested a hearing before an ALJ, which was held on April 18, 2005, in Hazard, Kentucky. (Tr. 170-94)  On July 7, 2005, ALJ Lawrence ruled that Plaintiff was not entitled to disability benefits. (Tr. 10D-10J) This decision became the final decision of the Commissioner when the Appeals Council denied review on October 19, 2005. (Tr. 7-9)

On December 1, 2005, Plaintiff filed the instant action.  The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II.  DISCUSSION

### A.    Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.      The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 10E) At Steps 2 and 3, the ALJ found Plaintiff's low back pain, obesity, hypertension, coronary artery disease, and status post bypass surgery to be severe impairments. (*Id.*) However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform medium level work; that is, lifting and/or carrying 50 pounds occasionally and 25 pounds frequently.  The ALJ also found that he should only occasionally climb ramps or stairs, and never climb ladders, ropes or scaffolds, with stooping and crawling also limited to only occasionally. (Tr. 10F-10G)  The ALJ determined that given his RFC, Plaintiff could not return to his past relevant work as a coal company foreman/laborer. (Tr. 10H)

The ALJ therefore proceeded to the final step of the sequential evaluation.  At Step 5, the ALJ found there were a significant number of jobs available to Plaintiff in both the national and regional economies despite his limitations. (Tr. 10I)  This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (46 at the time of the hearing and so a "younger" individual), education (eleventh grade, limited education), past relevant work experience (no transferable skills or not in issue), and RFC. (Tr. 190-91) The VE testified that Plaintiff could obtain employment at the medium exertional level in weighing or inspecting jobs; and at the light or sedentary level as a cashier or counter clerk. (Tr. 191)  Since these were

positions of significant number in both the regional and national economies, the ALJ

concluded Plaintiff was not disabled under the Social Security Act. (Tr. 10J)

**C.      Analysis**

On appeal, Plaintiff contends the ALJ improperly evaluated the medical evidence

submitted by his treating and examining physicians.  He further contends that the ALJ's

RFC assessment is not supported by substantial evidence.

Medical Opinion Evidence

Dr. Van S. Breeding of Mountain Comprehensive Care has been Plaintiff's primary

care physician since 1999.  His notes reflect that he has seen Plaintiff for various and

sundry complaints typical of a primary care physician.

The first notation of back problems in Dr. Breeding's submitted office notes is

October 24, 2001. (Tr. 138) That note states that Plaintiff "has a history of having back

pain," although the balance of the note concerns complaints associated with his neck and

fails to indicate whether this reference to a history of back pain is as to the upper or lower

back.  The next office notation about Plaintiff's back is October 10, 2002 (tr. 91), and

indicates he strained his back while at work.  On examination, he had muscle spasm in the

lumbosacral or low back area, but Dr. Breeding noted his x-ray was unremarkable.  (*Id.*)

He was prescribed an anti-inflammatory, referred for evaluation of his back, and instructed

to return if he did not improve. (Tr. 91) The next reference to a back complaint is December

10, 2003. (Tr. 85) Plaintiff then presented to Dr. Breeding on February 18, 2004, for exam

of his low back.  The doctor reports no muscle spasm, normal straight leg raise, strength,

and sensation, with the only positive finding being some limited motion of his back. (Tr.

135) The last entry in Dr. Breeding's office file concerning Plaintiff's back is April 25, 2005. That note states that he "needs form completed - back problems." (Tr. 131)

Plaintiff also underwent coronary artery bypass in 1999. Dr. Breeding's notes reflect he provided Plaintiff's follow-up care, with no significant problems. (Tr. 136-54) Following complaints of chest pain in July, 2003 (tr. 86), Dr. Breeding ordered a stress test. That stress test showed no angina during testing, with fair exercise capacity. Plaintiff had questionable right ventricle enlargement on echocardiogram. (Tr. 169) At his July 29, 2003, office visit to follow up on his shortness of breath complaints, Dr. Breeding noted that his stress test results were unremarkable and that his problem could be due to weight gain or coal miners' pneumoconiosis. (Tr. 86)

Dr. Breeding submitted two different Medical Assessments of Ability to Do Work-Related Activities Forms. The first is dated February 18, 2004, which corresponds with an office visit date as noted above. (Tr. 135)  At that time Dr. Breeding opined that Plaintiff can lift/carry 25 pounds occasionally, 10 pounds frequently; stand/walk for a total of 2 hours in an 8-hour workday, 30 minutes at a time; can never climb; can only occasionally balance, stoop, crouch, kneel, crawl and/or bend; and has environmental restrictions of heights, moving machinery, temperature extremes, chemicals, dust, fumes, humidity, and vibration. (Tr. 115-16) When asked on the form what medical findings support each assessment, Dr. Breeding responds with "CAD" (coronary artery disease), "DDD" (degenerative disc disease), and "low back pain."

As reflected in the office note mentioned above (tr. 131), Dr. Breeding completed a second Assessment on April 25, 2005 (tr. 131), a few days after the administrative hearing. In that Assessment Dr. Breeding opined that Plaintiff can stand/walk a total of 2 hours in

an 8-hour day, 15 minutes at a time; sit a total of 2 hours in an 8-hour day, 15 minutes at a time; never climb, balance, or crawl; occasionally stoop, crouch, and/or kneel; and has environmental restrictions of heights, moving machinery, temperature extremes, noise, fumes, humidity, and vibration. (Tr. 128-30)  He indicated the same medical findings in support of this Assessment as those stated on the February 18, 2004, form.

Dr. David Muffly, orthopedist, examined Plaintiff on one occasion at the referral of his attorney, for purposes of preparing an evaluative report.  Dr. Muffly reported that on examination, Plaintiff was not limping, and was able to walk on heels and toes, balance on one leg, and squat 50 percent.  Plaintiff reported some tenderness, with some back spasm and limitation in his range of motion.  The straight leg raise test was within normal limits but caused back pain.  His right calf measured 2 cm larger than his left.  And x-rays showed degenerative facet change and narrowing at the L5-S1 disc space.  Dr. Muffly's impression was that of chronic lumbosacral strain from cumulative trauma as coal miner.  He opined a 20 pound lifting restriction, only infrequent bending and stooping, that he "[s]hould only sit, stand or walk less than 3 hours in a 8 hour day," and needs to change positions every 30-60 minutes. (Tr. 126-27)

While Plaintiff's claim was at the agency level, two consultant reviews were requested.  The medical evidence in the file at that time that was provided to the reviewers consisted of some of Dr. Breeding's office records.  Dr. James Ross completed a Physical Residual Functional Capacity Assessment on January 5, 2004.  In it, he opined that Plaintiff can lift/carry 50 pounds occasionally, 25 pounds frequently; stand and/or walk a total of 6 hours in an 8-hour day; sit a total of 6 hours in an 8-hour day; never climb ladders, ropes, scaffolds; and occasionally climb ramps, stairs, stoop, or crawl. (Tr. 107-14)  A Physical

6

Residual Functional Capacity Assessment was also completed by Dr. C. Hernandez on March 19, 2004, in which he affirms the restrictions and limitations opined by Dr. Ross based upon a primary diagnosis of chronic low back pain. (Tr. 117-25)  In ultimately determining that Plaintiff retains the RFC to perform medium work, being able to lift/carry 50 pounds occasionally and 25 pounds frequently, the ALJ looked to the opinions of Drs. Ross and Hernandez, as opposed to Drs. Breeding's and Muffly's more restrictive assessments.

Weighing the Medical Opinions

As noted, Plaintiff complains the ALJ failed to properly weigh the medical evidence submitted in support of his claim.  In evaluating opinion evidence under 20 C.F.R. § 404.1527(d), the opinions of treating physicians are given substantial, if not controlling, deference in social security disability proceedings. 20 C.F.R. § 404.1527(d)(2); *Warner v. Commissioner of Social Sec.*, 375 F.3d 387 (6th Cir. 2004).  An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).

Moreover, if a treating physician opinion is not given controlling weight, "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988) (citations omitted).  However, the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings, *Houston v. Secretary,* 736 F.2d 365, 367 (6th Cir.1984), and is not contradicted by substantial evidence to the contrary.  *Loy v. Secretary,* 901 F.2d 1306, 1308-09 (6th Cir. 1990).  Thus,

the Commissioner is not bound by the opinion of a treating physician when the opinion is contradicted by objective medical evidence.  *Cohen v. Secretary,* 964 F.2d 524, 528 (6th Cir.1992).  Yet 20 C.F.R. § 1527(d)(2) also contains a clear procedural requirement; that an ALJ must give good reasons for rejecting the opinions of treating physicians.  *See also Wilson v. Commissioner,* 378 F.3d 541 (6th Cir. 2004).

Plaintiff cites to these general (treating physician) standards in his motion.  Plaintiff submits that the ALJ failed to give Dr. Breeding's opinions "proper weight." (Doc. #11, p.10) It is not entirely clear to the court whether Plaintiff argues that, as his treating physician, Dr. Breeding's opinions were entitled to controlling weight, or whether he argues that they are entitled to at least some weight greater than that of the state agency physicians.  Plaintiff also cites to the *Wilson* case, implying the ALJ failed to adequately discuss why he rejected Dr. Breeding's opinions.

Plaintiff similarly argues that the ALJ also failed to give "proper weight" to Dr. Muffly's opinions.  Plaintiff protests that Dr. Muffly was not even mentioned nor were his opinions evaluated in the decision.

A review of the record reflects the ALJ did, in fact, address the opinions of Drs. Breeding and Muffly in his written decision.  Specifically, the decision reflects the following discussion of those medical sources:

> The medical evidence of record shows the claimant has received routine conservative treatment from his family physician, Dr. Breeding, for hypertension, hypothyroidism, hyperlipidemia, coronary artery disease and low back pain.  There is radiographic evidence of some degenerative changes in his lumbosacral spine.  The claimant is status post (July 1999) coronary artery bypass grafting.  A Cardiolite stress test done in July 2003 revealed no discrete area of ischemia; the claimant had fair exercise capacity, and no angina was noted during stress testing.  Dr. Breeding has supplied two assessments of the claimant's residual functional capacity – the

8

first (February 2004) consistent with an ability to perform a restricted range of sedentary to light work,[footnote 3] the second (April 2005) inconsistent with an ability to do sustained work activities in an ordinary work setting on a regular and continuing basis....

[footnote 3] In June 2004, an examining orthopedist, diagnosing chronic lumbosacral strain, also identified an assessment of the claimant's residual functional capacity that is consistent with a limited range of sedentary to light work – 20 pounds maximum lifting, position change every 30 to 60 minutes, only infrequent bending and stooping, only sit, stand or walk less than 3 hours in an 8 hour day.

(Tr. 10F)

The undersigned will note here that he has considered Dr. Breeding's opinion that the claimant in effect is disabled [referring to the April 2005 assessment]. Even though from a treating source, an opinion that a claimant is "disabled" is an opinion on an issue that is reserved to the Commissioner and, thus, is never entitled to controlling weight or special significance.  In this case, the undersigned finds that Dr. Breeding's specific assessments [referring to both assessments] of the claimant's residual functional capacity are not well supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence in the record.  The comparatively minimal findings on clinical examination and radiographic studies are not supportive of the degree of functional limitation posited by Dr. Breeding.  As noted below, the timing of the claimant's apparently rapid decline in functioning – coincident with the closing of the mine and his lay off – also has been viewed with skepticism.  Therefore, the undersigned concludes that Dr. Breeding's assessments[footnote 5] cannot be adopted.  20 CFR § 404.1527(e); Social Security Ruling 96-5p.  The record as a whole best comports with the assessments of the State agency physicians.

[footnote 5] For the same reasons, the [ALJ] finds the functional limitations identified by the examining orthopedist to be unduly restrictive.

(Tr. 10G)

In this case, the Court concludes that the ALJ did not run afoul of the "treating physician" rule in rejecting Dr. Breeding's and Dr. Muffly's opinions.[1]  Plaintiff's suggestion

---

[1]As a one-time consultative examiner, the ALJ was not required to give controlling weight to Dr. Muffly's opinion.

that the ALJ failed to discuss Dr. Breeding's and Dr. Muffly's opinions is unfounded.  His decision refers to and summarizes Dr. Breeding's course of treatment and refers to Dr. Muffly's orthopedic exam.  Discussing their opinions together, he also explains why he gave little or no weight to them based upon the record as a whole.  Key to the ALJ were the minimal positive objective findings on clinical exam or x-ray compared with the degree of restrictions assessed by these doctors, meaning that their opinions were not well-supported by objective data and were inconsistent with treatment records.  The ALJ also points to the timing of Plaintiff's alleged disability with the ending of his long-time employment; the unaccounted for discrepancy in having done heavy manual labor with now being disabled despite no medical evidence of any significant decline or change in his physical condition.

The Court cannot say that the reasons given by the ALJ were unfounded in the record.  Plaintiff's treatment for back problems has been minimal.  Plaintiff testified he does not take pain medication (tr. 187), nor was any prescribed for him (tr. 49, 66, 73, 80).  The record evidences significant time gaps in Plaintiff's complaints to Dr. Breeding about back pain, including after being laid off.  While he was still working, he did not miss or alter his work schedule or duties due to this pain, a fact he also reported to Dr. Muffly. (Tr. 46, 126) He worked long, labor-intensive days in the coal mines, six days a week. (Tr. 46-47, 56) Plaintiff testified at hearing that he stopped working because the mine closed and he was laid off, not because he was physically unable to perform his job. (Tr. 46, 83, 126) And Plaintiff's stress test, administered a month before his alleged disability onset date, is referred to in Dr. Breeding's notes as "unremarkable." (Tr. 86)

Dr. Breeding's second assessment contained restrictions so severe the ALJ described it as basically stating that Plaintiff is disabled.  The key restriction added in the

10

April 2005 assessment was that of sitting for a maximum of only two hours per day.[2]

Contrary to Plaintiff's suggestion, the ALJ was not required to give this opinion controlling weight. Medical source opinions about whether an individual is "disabled" are administrative findings that are reserved to the Commissioner and are not entitled to controlling weight or given special significance, even when offered by a treating source. *See* 20 C.F.R. § 404.1527(e). An ALJ determines disability. When a physician believes the patient is disabled, his role is to communicate such via restrictions and limitations credible because they are supported by relevant evidence of medical signs and laboratory findings.

SSR 96-2p states, in relevant part, that "[t]he judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify. SSR 96-2p further provides that "[i]t is an error to give an opinion controlling weight because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." The ALJ complied with SSR 96-2p because he found that medical documentation to support the opinions of Dr. Breeding or Dr. Muffly that Plaintiff is incapable of gainful employment was lacking.

---

[2]By his statement that Plaintiff "[s]hould only sit, stand or walk less than 3 hours in a 8 hour day," Dr. Muffly similarly basically finds Plaintiff to be disabled, if the three hour restriction is interpreted as a combined maximum total for all such activities. No substantial gainful employment would be available to Plaintiff based on such severe restrictions, as confirmed by the VE. (Tr. 190) The record reflects the ALJ was not sure whether Dr. Muffly was instead restricting Plaintiff to a maximum of three hours sitting, three hours of walking, or three hours of standing per day (tr. 190), which interpretation the ALJ characterized as consistent with a limited range of sedentary to light work. (Tr. 10F n.3)

Plaintiff goes on to protest what he notes as the controlling weight given to the state agency doctors.  Plaintiff, relying on *Shelman v. Heckler,* 821 F.2d 316 (6th Cir. 1987), argues that nonexamining opinions receive only little weight when contrary to a treating doctor's opinions.  This principle is not applied as a bright-line rule.  The focus and context of the *Shelman* case were that, before looking to nonexamining opinions, the ALJ failed to explain why he rejected the opinions offered by treating physicians.  Unless and until the ALJ makes a finding that the treating opinions are not supported by sufficient medical data, it is inappropriate to turn to other medical opinion evidence.  *Id.*

In this case, the ALJ did not error in his consideration and utilization of the state agency physician opinions.  His decision expressly notes the role of such evidence in the hierarchy of giving due consideration to medical evidence.

> .... My conclusion that the claimant is not disabled is further supported by the opinions of the State agency medical consultants.  As those of nonexamining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians who also are experts in the evaluation of the medical issues in disability claims under the Social Security Act.  Social Security Rule 96-6p.

(Tr. 10G)

Plaintiff submits the weight given by the ALJ to the state agency physicians is unsupported because their review was early in the application process and they did not have the benefit of all of the medical evidence.[3]  He submits these opinions cannot be

---

[3]Plaintiff protests that both agency physicians noted there was no treating source assessment statement in the records provided (Tr. 113, 124).  As Plaintiff notes, Dr. Breeding did provide an assessment dated 2/18/04 (which was in the interval between Dr. Ross' and Dr. Hernandez's assessments), though the date the assessment was received by SSA is not noted. It does not appear this assessment was provided to Dr. Hernandez if it was received prior to contacting him for consultation.  This does not constitute reversible error, as the documentation reflects little if any change in Plaintiff's condition in the interval between Dr. Ross' and Dr. Hernandez's preparation of their assessments.

based on substantial evidence because these doctors did not have most of the medical records.  Again, the ALJ explained he was not and could not give their opinions controlling weight.  But their opinions are to be considered, along with all medical opinion evidence. That further medical information was submitted after their opinions were rendered is a consideration to determining weight, but does not mean the opinion is rejected outright. As the Commissioner points out, the later submitted medical records do not evidence a significant change in Plaintiff's well-being from that which existed at the time of their review. He had only sporadic office visits and treatment for back pain, no diagnostic testing, no referrals to specialists, and his coronary artery disease remained stable.

It is the function of an ALJ to evaluate a claim based upon the record compiled in connection with an application.  *See* 20 C.F.R. § 404.1520.  This includes evaluating medical proof.  *Id.* § 404.1527; *Webb v. Comm'r of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004)("ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [ ] residual functional capacity")(internal quotation omitted).  Thus, this is a part of the ALJ's role and function to evaluate medical proof so as to determine disability.  It is the ALJ's responsibility to weigh the medical evidence if conflicting medical opinions have been presented.  *McCann v. Califano,* 621 F.2d 829, 832 (6th Cir. 1980).  ALJ Lawrence referred to these state agency assessments in his review of the medical evidence pertaining to Plaintiff's physical abilities and in formulating Plaintiff's physical RFC.  The excerpt from the ALJ's decision cited above, *see supra* page 9, reflects the ALJ's attempt to resolve these divergent opinions.  This is precisely the ALJ's function.  *See Ziegler v. Sullivan,* 894 F.2d 1337, 1990 WL 6954, at *4 (6th Cir.)(unpublished table decision).

For all of these reasons, the Court finds that the ALJ properly weighed the conflicting medical evidence relating to Plaintiff's physical impairments.  Since the treating source's medical opinion must be "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, the adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion.  It must also not be inconsistent with the other substantial evidence in the case record.  Here, the other substantial evidence in the case record includes Dr. Breeding's progress notes along with Dr. Muffly examination findings, Plaintiff's testimony,[4] and his work history, and the state agency assessments. As the ALJ correctly found, the actual medical opinions submitted by Drs. Breeding and Muffly do not correspond to nor are they consistent with the record as a whole. (Tr. 10G)

RFC Determination

Finally, Plaintiff also alleges that the RFC is not supported by substantial evidence. The RFC incorporates the limitations offered by the state agency physicians.  As discussed hereinabove, the ALJ did not just adopt these opinions outright, sight unseen to other medical evidence.  Rather, he concluded that these limitations were more consistent with Plaintiff's overall medical history and course of care and treatment, as well as the other

---

[4]The ALJ found Plaintiff's testimony about his physical maladies and limitations therefrom to be only partially credible, explaining in his decision that:
> ... the claimant quit working due to lay off.  The claimant worked at the heavy level of exertion until the lay off in August 2003.  When questioned about the sudden decrease in functional ability, he said in the last couple of years he did basically no lifting.  Even if this is true, since the lay off he alleges he can function only 10% of the day (he lies down 90% of the day), and can stand only 5 minutes, sit 20 to 25 minutes.  There is no medical evidence to support this.  There also is very little objective evidence of back impairment. After carefully considering the record in its entirety, the [ALJ] finds the claimant's allegations to be only partially credible in light of the timing (coincident with the mine closing) of the alleged onset of debilitating symptoms, the degree of medical treatment required and the medical history.
(Tr. 10G-10H)

14

record evidence such as Plaintiff's functional abilities before and after being laid off, and the timing of disability onset.  Therefore, the Court cannot say that substantial evidence to support the RFC is lacking.

To the extent Plaintiff challenges that the RFC does not comply with SSR 96-8p, the record reflects otherwise.  Plaintiff submits SSR 96-8p calls for the RFC to set forth function-by-function restrictions and to explain what evidence was relied upon for those determinations.  The RFC stated by ALJ Lawrence in his decision is that Plaintiff can lift or carry 50 pounds occasionally and 25 pounds frequently.  However, the ALJ also refers to "medium work." (Tr. Tr. 10H)  The ALJ cites to the jobs identified by the vocational expert at hearing as being available to Plaintiff based upon his RFC and vocational factors.  (Tr. 10I) The VE identified those jobs based upon the ALJ's hypothetical that did, in fact, employ a function-by-function analysis.

> Q.   All right.   If we assume as a second hypothetical the same biographical information that I gave you in the first, but now assume that he could perform within the parameters of an assessment done by state examining physicians.  He could lift 50 pounds occasionally, 25 pounds frequently, stand about six hours out of an eight-hour day, sit about six hours out of an eight-hour day.  Could only occasionally climb ramps or stairs, but should never climb ladders or ropes or scaffolds.  Could occasionally stoop and bend and occasionally crawl.  Based on those assumptions, would there be any jobs that such a person could perform?

(Tr. 190-91)

And as for explaining the various evidence to support each determination comprising the RFC, the ALJ did so in his decision.  He explained why he considered the restrictions assessed by Drs. Ross and Hernandez to be most appropriate and consistent with the case record, already discussed hereinabove.  The Court does not view as error, let alone

15

reversible error, that the ALJ did not set forth this discussion in the same paragraph that he set forth his RFC finding.

For these reasons, the Court concludes that there is substantial evidence to support the ALJ's findings and his conclusion that Plaintiff does not meet the requirements for disabled status under the Social Security Act.  His decision will therefore be affirmed.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #12) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 28th day of March, 2007.



Signed By:

**David L. Bunning**

**United States District Judge**

G:\DATA\SocialSecurity\MOOs\7-05-385-Roberts.MOO.wpd